## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| NASH N. TUTEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV422-096 |
| | ) | |
| OFFICER DUSTIN | ) | |
| BELFIORE,[1] *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The Court previously directed *pro se* plaintiff Nash Tuten to file an amended complaint to clarify his allegations concerning constitutional violations during his arrest. *See* doc. 13. He has complied and submitted an Amended Complaint. Doc. 14. The Court, therefore, proceeds to screen his Amended Complaint. *See* 28 U.S.C. § 1915A.

As previously explained, *see* doc. 13 at 1-2, the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276,

---

[1] The Court previously noted that references to the defendant were inconsistent. *See* doc. 13 at 1 n. 1. The police report, attached to Tuten's Amended Complaint, establishes that the officer in question is Dustin Belfiore. *See* doc. 14 at 17. The Clerk is **DIRECTED** to correct defendant's name in the caption of this case.

1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal). As Tuten is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

First, there are a number of defendants, named in the original Complaint, but wholly omitted from the Amended Complaint. *Compare* doc. 1 at 4 *with* doc. 14 at 2, 14. As discussed more fully below, the Amended Complaint names only individual police officers Seanz, Gesiler, *see* doc. 14 at 2, Belfiore, and Skaff, *id.* at 14. Since Tuten's Amended Complaint supersedes his original, any claims asserted against defendants named in the original Complaint, but omitted from the Amended Complaint, are abandoned. *See, e.g., Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) ("An amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer part of the pleader's

averments against his adversary." (internal quotation marks and citation omitted)). Accordingly, defendants the State of Georgia, the Chatham County District Attorney's Office, the Chatham County Public Defender's Officer, the Chatham County Sheriff's Office, City of Savannah Police Department, D.A. Anthony Burton, Det. Justine Gause, Officer Taylor, and Katilyn Beck are **DISMISSED** from this case.[2]

Tuten's Amended Complaint identifies several defendants, Skaff, Seanz, Belfiore, and Gesiler, all of whom appear to be Savannah police officers. *See* doc. 14 at 2. His factual allegations present a narrative of the events leading to his arrest in September 2020. *See id.* at 12-16. He has also attached a police report, *id.* at 17-19, and medical records, *id.* at 20-21.[3] Tuten alleges that he called 911 to report an individual brandishing a firearm. *See id.* at 12. Defendant Saenz spoke to the individual and "redirected" officers' attention to Tuten. *Id.* The attached

---

[2] The Clerk has included other defendants on the docket that do not appear in either pleading or appear to be misnomers for named defendants. The Clerk is, therefore, **DIRECTED** to **TERMINATE** defendants "Officer Grousler, Cpt Oaenz, . . ., Major John Welcher, Dustin Gesilor, and Saenz Skaff," from the docket.

[3] The Court considers the contents of those exhibits as incorporated into the Amended Complaint. *See, e.g., Steiner v. Skaggs*, 2021 WL 1097337, at *1 n. 1 (S.D. Ga. Feb. 24, 2021) (citing *Madura v. Bank of Am., N.A.*, 767 F. App'x 868, 870 (11th Cir. 2019); *La Grasta v. Fist Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)) (including "facts gleaned from the complaint exhibits," in screening a *pro se* complaint).

report, prepared by Officer Belfiore, clarifies that Belfiore and Geisler, but not Saenz, made contact with an individual who volunteered that he was armed. *See id.* at 18. The individual surrendered his weapon to the officers. *Id.* He then informed them that "he was . . . looking for the man who has been slashing his tires." *Id.* He then informed officers "that he saw the man responsible run into an abandoned house . . . ." *Id.* Saenz identified the individual described as Tuten, who was "a suspect in multiple tire slashings that [had] been taking place over the last few months." *Id.*

Belfiore, Skaff, and Saenz entered the abandoned property. As they entered the property they "cleared the home giving lo[u]d verbal announcements . . . ." Doc. 14 at 18. Apparently in response to those announcements, they were informed by a radio broadcast "that Mr. Tuten was fleeing out of an upstairs window." *Id.* Officers searched the area looking for Tuten. During the search, Belfiore was advised by another officer, not named as a defendant, "that she located a male hiding under a home [in the vicinity]." *Id.* at 18-19. Belfiore reports that he "had the suspect at gun point giving lo[u]d verbal commands for him to crawl towards [Belfiore] . . . ." *Id.* at 19. When Belfiore realized that Tuten was

responding to commands from other officers, he "stopped giving commands and held security on him while other officers talked him out from under the house." *Id.* The report indicates that Tuten was arrested on charges of criminal trespassing, in violation of O.C.G.A. § 16-7-21, and fleeing to elude, in violation of O.C.G.A. § 40-6-395. *Id.*

The exact nature of the claims Tuten asserts are not entirely clear. Tuten's allegations in the Amended Complaint, as opposed to the attached exhibits, are almost exclusively comprised of conclusory accusations. *See, e.g.,* doc. 14 at 12 (alleging that Saenz's decision to "redirect" officers' attention was "[i]ntentionally neglecting the call of duty and breached not only his duty but the rest of the police officers to unlawful [sic] engage the plaintiffs citizen without probable cause."). The Amended Complaint invokes the Second, Fourth, Fifth, Eighth, Eleventh, and Fourteenth Amendments.[4] *See id.* at 3-4. Among the relief

---

[4] Several of the amendments invoked have no plausible application, given the facts alleged. The Eleventh Amendment limits the judicial power of the United States in the context of suits against states. *See* U.S. Const., amend. XI. Although Tuten's allegations, discussed below, concern being held at gun-point, there is no allegation in the Amended Complaint that his right to posses or carry a firearm was ever implicated. *See* U.S. Const., amend. II. The Eighth Amendment's prohibition of cruel and unusual punishment does not apply to claims of excessive force during an arrest or during pretrial detention. *See, e.g., Graham v. Connor*, 490 U.S. 386, 395 (1989); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the

that Tuten seeks is that someone, it is not clear who, "press criminal charges against each defendant." *Id.* at 5.  Despite the ambiguity, the facts alleged do not support any claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

First, Tuten's request to initiate criminal proceedings against any defendant is frivolous.  Private citizens are simply not permitted to initiate criminal actions in federal court. *See, e.g., Lopez v. Robinson,* 914 F.2d 486, 494 (4th Cir. 1990) ("No citizen has an enforceable right to institute a criminal prosecution." (citing *Linda R. v. Richard V.*, 410 U.S. 614, 619 (1973) ("In American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution

---

Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners." (citations omitted)).  Although the Fourteenth Amendment provides the applicable standard for mistreatment of arrestees in custody, claims of excessive force or impropriety during an arrest are governed by the Fourth Amendment, not the Fourteenth. *See, e.g., Jordan v. Mosley*, 298 F. App'x 803, 805-06 (11th Cir. 2008) (where "all of [plaintiff's] allegations flowed from [his] arrest[,] . . . the district court correctly determined that [his] claims should be analyzed under the Fourth Amendment, not the Due Process Clause of the Fourteenth Amendment.").  To the extent that Tuten invokes the Fifth Amendment's Due Process clause, its protections only apply to federal, not state actors. *See, e.g., Jordan*, 298 F. App'x 806 n. 5 (citing *Knoetze v. U.S. Dep't of State*, 634 F.2d 207, 211 (5th Cir. 1981)).  To the extent that the facts alleged in the Amended Complaint plausibly implicate any of Tuten's constitutional rights, as discussed below, they only implicate his Fourth Amendment rights.

of another.")); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) ("[A] private citizen has no authority to initiate a federal criminal prosecution."). The Court is also without authority to order the United States Attorney, or indeed any other law enforcement officer, to initiate a prosecution. *See, e.g., Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 379 (2nd Cir. 1973) (citations omitted) ("federal courts have traditionally and, to our knowledge, uniformly refrained from overturning, at the insistence of a private person, discretionary decisions of federal prosecuting authorities not to prosecute persons regarding whom a complaint of criminal conduct is made[,] . . . even in cases . . .where . . . serious questions are raised as to the protection of the civil rights and physical security of a definable class of victims of crime and as to the fair administration of the criminal justice system."). Such orders would violate the Constitution's separation of powers between the Executive and Judicial Branches. *See id.* at 379-80 (quotes and cite omitted) (the United States Attorney, although a member of the bar and an officer of the court, "is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case.").

7

To the extent that his Amended Complaint seeks to "press criminal charges against each defendant," the claim is **DISMISSED**.  28 U.S.C. § 1915A(b)(1).

The Court's prior Order noted the possibility of a claim that holding Tuten at gun-point amounted to excessive force under the Fourth Amendment.  *See* doc. 13 at 7-8.  The additional details supplied in the Amended Complaint are inconsistent with such a claim.  While courts have recognized that being held at gunpoint may rise to the level of excessive force under the Fourth Amendment, it is not necessarily excessive.  *See, e.g., Wright v. East Point Police Dept.*, 2013 WL 510625, at \*3 (N.D. Ga. Jan. 11, 2013) (quoting *Croom v. Balkwill*, 645 F.3d 1240, 1252 n. 17 (11th Cir. 2011)); *see also, e.g., Cabral v. City of New York*, 2014 WL 4636433, at \*11 (S.D.N.Y. Sept. 17, 2014) (defendant officer's "approach with his gun drawn does not constitute excessive force as a matter of law.").

The Eleventh Circuit has explained that:

> In an excessive force case arising out of an arrest, whether a constitutional violation occurred is governed by the Fourth Amendment's "objective reasonableness" standard. *Brosseau v. Haugen*, 543 U.S. 194, 197 . . . (2004) . . . .  A genuine "excessive force" claim relates to the manner in which an arrest was carried out, independent of whether law

> enforcement had the power to arrest. *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006). Our cases identify several factors instructive in determining whether an officer's use of force was objectively reasonable, including "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000).

*Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). Moreover, "excessive force is judged solely on an objective basis." *Id.* at 1330 (citing, *inter alia., Graham v. Connor*, 490 U.S. at 399).

The Amended Complaint shows that officers pointing their guns at Tuten was objectively reasonable. Officers were alerted to an individual who was accused of vandalism, *i.e.* slashing tires, and was hiding in "an abandoned property." Doc. 14 at 18. In response to officers' announcement of their presence in that property, Tuten was observed "fleeing out of an upstairs window . . . ." *Id.* Officers searched for Tuten and discovered him "hiding under a home . . . ." Officers held Tuten at gunpoint until he abandoned his hiding place and was arrested. *Id.* at 19. Given that Tuten had concealed himself under a house after apparently fleeing his original hiding place in an abandoned property to escape law enforcement, officers decision to draw their guns until they

could be assured that Tuten did not pose a threat was not excessive.  *Cf.,
e.g., Wright*, 2013 WL 510625, at *3-*4 (officer's drawing gun to arrest "a
suspicious person [allegedly] involved in an attempted armed robbery . .
. was not excessive . . . .").  *Cf.  Baird v. Renberger*, 576 F.3d 340, 346-47
(7th Cir. 2009) ("[C]ourts do not find constitutional violations for gun
pointing when there is a reasonable threat of danger or violence to
police.").  Since holding Tuten at gunpoint was reasonable, under the
circumstances alleged in the Amended Complaint, his Fourth
Amendment excessive force claim is **DISMISSED**.

The Amended Complaint also waives at a false arrest claim.
"Under the Fourth Amendment, which is applicable to the States through
the Fourteenth Amendment, persons have the right not to be arrested
without probable cause.  [Cit.]  Violation of this right may give rise to a
claim for damages pursuant to section 1983 . . . ."  *Von Stein v. Brescher*,
904 F.2d 572, 578 (11th Cir. 1990) (citations omitted); *see also Ortega v.
Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) ("A warrantless arrest
without probable cause violates the Fourth Amendment and forms the
basis for a section 1983 claim." (citation omitted)).  "[A] federal . . . claim
for false arrest requires the plaintiff to show the absence of probable

cause at the time of the arrest." *Hesed-El v. McCord*, 829 F. App'x 469, 472 (11th Cir. 2020). "An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010).

Tuten's assertion of such a claim is vague and conclusory, at best. He refers several times in the Amended Complaint to "unlawful engagement." *See, e.g.*, doc. 14 at 4. He also states that officers "unlawful[ly] engage[d] the plaintiffs [sic] citizen without probable cause." *Id.* at 12. He later refers, generally, to the scope of the Fourth Amendment's protections. *See id.* at 14 ("4th Amendment. The right to be secured in there [sic] persons and house and unreasonable searches and seizures, and no warrants shall issue without probable cause."). A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (citation omitted). The Supreme Court emphasized that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Characterizations of a defendant's

conduct as unlawful are " 'legal conclusion[s]' and, as such, . . . not entitled to the assumption of truth." *Id.* at 680 (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (2007)).  His false arrest claim is, therefore, **DISMISSED**.

Tuten's false arrest claim fails for a second, independently sufficient, reason.  The facts presented in the police report incorporated into the Amended Complaint show that officers had probable cause to arrest him for criminal trespass.  *See* doc. 14 at 18.  It is important, in this context, to recognize that "probable cause does not require the same standard of conclusiveness and probability as the facts necessary to support a conviction."  *United States v. Lindsey*, 482 F.3d 1285, 1291 (11th Cir. 2007) (internal quotation marks and citation omitted).  "Probable cause to arrest exists when the totality of the facts and circumstances support a reasonable belief that the suspect had committed or was committing a crime."  *Id.* (internal quotation marks and citation omitted); *see also, e.g., Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1120 (11th Cir. 1992) ("Probable cause requires more than mere suspicion, but does not require convincing

proof."). The facts reflected in the police report show that officers had probable cause to arrest Tuten.

The police report indicates that Tuten was arrested for, among other offenses, criminal trespass, in violation of O.C.G.A. § 16-7-21. *See* doc. 14 at 18. The statute states that "[a] person commits the offense of criminal trespass when he or she intentionally damages any property of another without consent of that other person and the damage thereto is $500.00 or less or knowingly and maliciously interferes with the possession or use of the property of another person without consent of that person." O.C.G.A. § 16-7-21(a).[5] The report reflects that the individual that officers first encountered identified Tuten as "the man who has been slashing his tires." Doc. 14 at 18. Saenz was able to identify Tuten and informed other officers that he was "a suspect in multiple tire slashings that [had] been taking place over the last few

---

[5] Tuten's notation on the police report suggests that he disputes that there was probable cause to arrest him for criminal trespass because he was authorized to be in one of the locations at issue. *See* doc. 14 at 19. Which location he alleges he had permission to enter is not clear. *See id.* (alleging he "was at work when [he] called the police."). That assumes, however, that it was his entry into either the "abandoned property," or the property where he was discovered "hiding under a home," that supported probable cause for the trespass. *See id.* at 18-19. As discussed below, the report that Tuten was responsible for tire slashings, however, provided probable cause for his arrest for criminal trespass.

13

months." *Id.*  While criminal trespass frequently involves damage to real property, Georgia law is clear that " '[p]roperty' means anything of value, including but not limited to real estate, [and] tangible and intangible personal property . . . ." O.C.G.A. § 16-1-3(13).  In fact, the Georgia Court of Appeals has recognized that flattening tires can support a conviction for criminal trespass.  *See Jones v. State*, 629 S.E.2d 546, 546-47 (Ga. Ct. App. 2006) (affirming conviction for criminal trespass where defendants' "letting the air out of . . . tires and removing . . .lug nuts and . . . disconnecting a battery cable . . . .").  Tuten may dispute the veracity of the statement that he was responsible for the tire slashing, but "[g]enerally, an officer is entitled to rely on a victim's criminal complaint as support for probable cause." *Rankin v. Evans*, 133 F.3d 1425, 1441 (11th Cir. 1998); *see also Green v. City of Lawrenceville, Ga.*, 745 F. App'x 881, 883-84 (11th Cir. 2018); *Martin v. Wood*, 648 F. App'x 911, 916 (11th Cir. 2016) ("Indeed, we have previously found the statements of a single witness sufficient to establish probable cause to arrest a suspect.").  The report that Tuten was responsible for the tire slashing, combined with Saenz's report that he was suspected in other tire slashings, support the

conclusion that officers had probable cause to arrest Tuten for criminal trespass.

The existence of probable cause would preclude any § 1983 false arrest claim.  *See, e.g., Brown*, 608 F.3d at 734 ("the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." (citation omitted)).  Even if the facts in the Amended Complaint and attached exhibits were not sufficient to affirmatively conclude that probable cause existed, they compound Tuten's failure to adequately allege that officers lacked probable cause to arrest him.  *See, e.g., Hased-El v. McCord*, 2019 WL 1441624, at *3 (S.D. Ga. Mar. 29, 2019), *aff'd Hased-El*, 829 F. App'x at 472 ("Without factual allegations demonstrating the absence of probable cause for Plaintiff's arrest, Plaintiff fails to state a plausible claim . . . for false arrest.").  Accordingly, to the extent Tuten asserts a § 1983 false arrest claim, he has failed to state a claim upon which relief may be granted.  His claim is, therefore, **DISMISSED**.  *See* 28 U.S.C. § 1915A(b)(1).

In summary, Tuten's Amended Complaint abandons any claim against defendants named in the original Complaint but omitted from the Amended Complaint.  Construed liberally, the Amended Complaint

alleges facts that implicate Tuten's Fourth Amendment rights.  However, the Amended Complaint fails to state a claim upon which relief may be granted either that Defendant Dustin Belfiore subjected Tuten to excessive force when he held Tuten at gunpoint or that officers lacked probable cause to arrest Tuten.  Finally, Tuten's request "[t]o press criminal charges against each defendant," is frivolous.   Since his Amended Complaint fails to state any viable claim for relief, it is **DISMISSED**.   28 U.S.C. § 1915A(1)(b).   The Clerk of Court is **DIRECTED** to close this case.

       **SO ORDERED,** this <u>7th</u> day of July, 2022.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA